**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan Angel HUGUEZ–IBARRA,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dagobastro OLIVARRIA–PALACIOS,**
**Defendant–Appellant.**

Nos. 88–1354, 88–1384.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1989.

Decided Jan. 21, 1992.

**548**

Peter B. Keller, Keller & Postero, Tucson, Ariz., for defendant-appellant Juan Huguez–Ibarra.

Stephen G. Ralls, Sean Bruner, Ralls & Bruner, Tucson, Ariz., for defendant-appellant Dagobastro Olivarria–Palacios.

Phillip G. Espinosa, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before POOLE, REINHARDT and BEEZER, Circuit Judges.

POOLE, Circuit Judge:

Appellants Juan Huguez–Ibarra and Dagobastro Olivarria–Palacios appeal their convictions for conspiracy to possess with intent to distribute and possession with the intent to distribute 500 grams or more but less than five kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii)(II). They were tried as co-defendants and their appeals have been consolidated.

They appeal the district court's denial of their motions to suppress. Both also claim that the district court erred when it denied their motions to exclude from evidence notebooks found in their residence. Huguez–Ibarra alone alleges the district court erred when it allowed a receipt for the purchase of an automobile, found in the residence, to be admitted into evidence. Furthermore, Huguez–Ibarra challenges the district court's denial of his motion for a mistrial or continuance based on the late disclosure of evidence. Finally, Huguez–Ibarra argues that the district court erred when it denied his proposed jury instruction on a so-called "lesser included offense."

We conclude that the government agents lacked probable cause for their warrantless entry into Appellants' residence. The evidence which the government obtained as a result of that entry should therefore have been suppressed. Because of the prejudicial impact which the inadmissible evidence potentially had on the jury, we reverse the convictions and remand for a new trial.

We have also concluded that the search warrant for the residence was not supported by probable cause. Accordingly, we reverse and remand to the district court for further proceedings to consider whether the evidence seized pursuant to the search warrants is nevertheless admissible under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). For the guidance of the district court in the event of retrial, we also discuss the other issues raised by Appellants in their appeals.

FACTS

In August 1987, United States Drug Enforcement Administration (DEA) agents received citizen complaints regarding a high level of vehicular traffic at 3701 East Dover Stravenue ("residence"), in Tucson, Arizona. In response to the citizen complaints, DEA Agents Teresa Gulotta and Alex Vazquez began drive-by surveillance of the residence several times a week in August 1987. Agents began extended surveillance in October 1987, while continuing to drive by periodically. Starting in December 1987 or January 1988, stationary surveillance of the residence was conducted one or two times a month. Agent Gulotta herself participated in stationary surveil-

lance three or four times over the course of the investigation.

Over the course of the entire investigation, agents documented in excess of forty different vehicles at the residence. The agents ran checks on those vehicles, and found that some were registered to individuals reputed to be "affiliates" of narcotics organizations. Agents on occasion tried to follow vehicles departing the residence, and found them to drive in "an erratic and circuitous manner." Several vehicles were stopped after leaving the residence, their occupants questioned, and the vehicles searched.

During the stationary surveillance, which lasted five or six hours, agents observed as many as six to eight vehicles pulling up to the residence, although the number of vehicles observed varied. Individuals would enter the residence, sometimes empty-handed and sometimes carrying boxes or bags. Visits would last anywhere from a few minutes to several hours, and then the visitors would return to their vehicles, sometimes carrying boxes and bags, and sometimes empty-handed. Agents also observed cars pulling into the carport, and on at least one occasion, a vehicle pulling through the carport and into the backyard. Agents noted that when the vehicle would reach the carport, the carport lights would be extinguished. Agents also on occasion observed "activity" surrounding the vehicles, but were unable to discern what was being done.

On April 29, 1988, at approximately 6:00 p.m., agents Vazquez and Gulotta, accompanied by other agents from the United States Customs Service and the United States Border Patrol, set up a stationary surveillance at the house. Two cars parked in front of the residence were joined by a Mercury Lynx (Mercury) and later a two-tone pick-up truck (pick-up). The occupants of the Mercury were seen entering the residence empty-handed and returning to their car with a white plastic shopping bag. They then drove away from the residence. The Border Patrol agents stopped the Mercury about two miles from the residence. Upon approaching the car, the agents detected the smell of marijuana. They brought a narcotics detection dog to the car, and the dog alerted to two suitcases visible in the car's hatch area. The white plastic bag seen carried to the car was empty and a search of the car revealed no drugs. A subsequent search of the suitcases also failed to reveal any narcotics. The occupants of the Mercury were released.

When the dog alerted to the suitcases, the agents decided to seek a search warrant for the residence. Agent Gulotta ended her surveillance of the residence to obtain the warrant. After she left the surveillance area but before she could obtain the search warrant, Agent Vazquez with other agents stopped the pick-up. Agent Gulotta's affidavit supporting the first search warrant contains no information regarding the events which took place after the stop of the Mercury. The stop of the pick-up occurred some time between 6:40 p.m. and 6:52 p.m. In response to questioning, the occupants of the pick-up denied having been at the residence. In addition to questioning the occupants, the agents brought a narcotics detection dog to the pick-up. The dog did not alert to the presence of drugs, and the agents released the pick-up.

At 7:20 p.m., Agent Vazquez made the decision to secure the residence until the search warrant could be obtained. He estimated that it would take two hours to obtain the search warrant and he was afraid that the occupants of the stopped vehicles would warn the residents of 3701 East Dover Stravenue. At approximately 7:36 p.m., Agent Vazquez and law enforcement agents drove up to the residence in one unmarked car and three marked cars. While approaching the residence, the agents saw the front door shut and the lights inside the residence go out. Agent Vazquez proceeded to the front door of the residence, knocked on the door, and announced his presence in Spanish and English. He heard rustling inside the residence. Receiving no response, he forced the front door open and entered the residence.

Agent Vazquez entered a bedroom and opened its bathroom door where he found a man, later identified as Huguez–Ibarra, holding an empty plastic bag, later found to contain cocaine residue, over a toilet. Agent Vazquez retrieved a semi-liquid slush from the toilet. The slush was found to be cocaine. A plastic bag and plastic sifter both containing cocaine residue, and money totaling approximately $10,000 were scattered around the toilet.

A second agent entered another bedroom and found Olivarria–Palacios in it. Both Huguez–Ibarra and Olivarria–Palacios were taken from the residence, and the agents waited outside for the search warrant. Until they entered the residence, the agents neither knew who lived in the residence nor had they actually found or seen any narcotics being carried into or out of the residence.

Upon obtaining the search warrant, the agents re-entered the residence. In the residence agents found a loaded Colt .38 revolver, phone bills, some rent receipts, and bottled water receipts in the name of Olivarria–Palacios. Inside the bedroom in which they found Olivarria–Palacios, the agents discovered two safes, one open and one closed. In the open safe they found a plastic bag containing cocaine residue, a notepad, a check payable to Olivarria–Palacios, and an automobile receipt in the name of Juan Beltran Hughes. In the closed safe, opened at the DEA office pursuant to a second search warrant, agents found approximately three pounds (1,323.6 grams) of cocaine, about $9,000 in cash, and five more notebooks.

## PROCEDURAL HISTORY

On May 18, 1988, Huguez–Ibarra and Olivarria–Palacios were charged in a two-count indictment with conspiracy to possess with intent to distribute 500 grams or more but less than 5 kilograms of cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute 500 grams or more but less than 5 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii)(II). Huguez–Ibarra and Oli-

varria–Palacios filed various pre-trial motions. Among them were motions requesting a Franks [1] hearing, the suppression of evidence seized in the warrantless entry, and the suppression of evidence seized in the subsequent entry pursuant to the search warrant.

In response, the district court redacted portions of the affidavit used to obtain the search warrant. The court then denied the motion for a Franks hearing and the motions to suppress, finding that probable cause existed to support a search warrant and, after the testimony of Agent Vazquez, that exigent circumstances existed to justify the warrantless entry.

On July 13, 1988, the first day of trial, the government revealed the existence of a videotape recording of activities surrounding the residence taken by a neighbor of the defendants. The government previously had turned the tape over to the the court for in camera review. Huguez–Ibarra's motion to produce the tape was denied. On July 14, 1989 he renewed his motion to produce the tape, which was also denied. At the end of that day the court reconsidered and allowed Huguez–Ibarra's attorney to view the tape before he cross-examined Agent Gulotta. For security reasons it was not introduced at trial.

The district court denied Appellants' motions to exclude the notebooks allegedly detailing drug transactions as well as Huguez–Ibarra's motion to exclude the car payment receipt. The notebooks were admitted with a limiting instruction. In addition, the court denied Huguez–Ibarra's motion for a continuance or mistrial based on the late disclosure of the videotape and the agents' notes. Finally, the court denied Huguez–Ibarra's proffered jury instruction on a so-called "lesser included offense."

Both Appellants were found guilty on each count of the indictment. On July 22, 1988, Huguez–Ibarra filed a motion for a new trial which was denied on September 16, 1988. On September 16, 1988, both Appellants were sentenced to six years im-

---

1. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

prisonment on both counts to run concurrently with one another.

## DISCUSSION

### I. The Motions to Suppress

■■■ Appellants have argued for suppression of evidence seized in the warrantless search of the residence, and for evidence seized pursuant to the search warrants. We review de novo the trial court's determination of the validity of a warrantless entry into a residence. *United States v. Lindsey*, 877 F.2d 777, 780 (9th Cir.1989). In assessing the validity of the searches conducted pursuant to the warrants, we review the magistrate's decision that probable cause existed for clear error. The district court's determination of probable cause in a case with redacted affidavits is reviewed de novo. *United States v. Dozier*, 844 F.2d 701, 706 (9th Cir.), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988).

### A. The Warrantless Entry

■■■ The agents' warrantless entry securing the residence was a seizure subject to the requirements of the Fourth Amendment. *United States v. Howard*, 828 F.2d 552, 554 (9th Cir.1987). The government has the burden of justifying the seizure under one of a few specifically established exceptions to the warrant requirement. To justify a warrantless entry, the government must demonstrate both probable cause and the existence of an exception to the warrant requirement, such as exigent circumstances. *Lindsey*, 877 F.2d at 780. Because we find that there was no probable cause, we need not consider whether exigent circumstances existed.

In reviewing a warrantless entry, it is up to this court "to make a practical, common-sense decision" whether based on the "totality of the circumstances" as known by the agents when they entered the residence there was a "fair probability that contraband or evidence of a crime" would be found inside. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Lindsey*, 877 F.2d at 780.

The agents observed facts during the course of the investigation giving rise to a suspicion of illegal activity. However, the only evidence of narcotics ever uncovered during the vehicular stops—the narcotics detection dog alerting to the suitcases in the Mercury on April 29th—was discredited when a search of the suitcases failed to turn up any narcotics. In addition, as the agents themselves admitted, there was no connection between the suitcases and the residence—the occupants of the Mercury had entered the residence empty handed and had returned with only a bag, itself found to be empty.

The only other circumstance supporting an inference that the residence housed narcotics or evidence of narcotics trafficking was the ability of agents to trace automobiles frequenting the residence to "affiliates" of narcotics organizations or "facilitators" of narcotics trafficking. While such evidence is certainly relevant, it alone is not sufficient to transform otherwise legal (albeit suspicious) activity into circumstances supporting probable cause. This is especially true where, as here, the visitors to the residence had at best a tenuous and undefined relationship to narcotics trafficking.[2] Such allegations show only that the residents of the house at 3701 East Dover Stravenue were acquaintances of acquaintances of individuals involved in the narcotics trade. Such twice-removed evidence, while not wholly irrelevant, cannot reasonably give rise to a "fair probability" that the residence was the locus of criminal

---

**2.** One example is provided by the affidavit supporting the applications for search warrants, which observes that Clementina Rivera, one of the subscribers for utilities at the residence, was married to Jesus Arias "who was involved in a narcotics related shooting in 1984." This fact, although more specific than many of the other allegations of involvement with narcotics trafficking, does little to support an inference that

the residence was the site of illegal narcotics trade.

This would, of course, be a different case were there a specific showing that the individuals frequenting the residence had themselves been previously involved in narcotics trafficking. Even so, however, such evidence would not alone provide probable cause for a seizure of the residence.

activities.[3] This is true even when combined with the unusual amount of vehicular traffic.

Since there was not probable cause supporting the warrantless entry of the residence, the evidence seized as a direct result of this illegal entry should have been suppressed. *Segura v. United States,* 468 U.S. 796, 812, 104 S.Ct. 3380, 3389, 82 L.Ed.2d 599 (1984).

### B. *Searches Pursuant to Warrants*

■ In reviewing the magistrate's decision that probable cause existed, we are limited to the information contained within the four corners of the affidavits supporting the application for the search warrant. *United States v. Stanert,* 762 F.2d 775, 778 (9th Cir.), *amended,* 769 F.2d 1410 (1985). The redacted affidavits in this case contained even less proof than that known to the agents who seized the residence, and thus were deficient for the same reasons as discussed above.[4] We therefore find that the magistrate's determination that sufficient probable cause existed to issue the warrant was clearly erroneous.

■ This, however, does not automatically require suppression. Under *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984), evidence will not be suppressed if the government acted in good faith—i.e., if the agents' reliance on the warrant was objectively reasonable. Because the reasonableness of the agent's reliance on the facially valid search warrant was not addressed in the trial court, we remand for a hearing on this issue.[5]

### II. *The Notebooks*

■ Appellants assert that the court erred in admitting the notepads because the government did not sufficiently establish the factual predicate for their admission as co-conspirator statements. They argue that under *United States v. Ordonez,* 737 F.2d 793 (9th Cir.1984), the government was required to lay a foundation for admission of drug ledgers. *Ordonez,* however, held only that the hearsay rule prohibits the introduction of drug ledgers without a foundation when the ledgers are being admitted to prove the truth of the matters asserted in them. In this case the trial judge made clear in his limiting instructions to the jury that the ledgers were not being admitted to prove the truth of what was written in them. Instead, they were admitted to show that the type of activities charged in the indictment were being carried out in the residence. Thus, "the rule against hearsay was not implicated and the requirement of 'a proper foundational showing for admitting the records to prove the truth of the matters asserted' was not triggered." *United States v. Jaramillo–Suarez,* 942 F.2d 1412, 1416 (9th Cir.1991).

■ Since it is not hearsay, such evidence may come in if there is a sufficient showing of relevance and authenticity and if its probative value outweighs undue prejudice. *Id.* at 1416–1417 (*citing United States v. Wilson,* 532 F.2d 641, 645 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976)). The notebooks in this case were circumstantially authenticated because they were found in the Ap-

---

**3.** It is well established that mere association with known or suspected criminals does not give rise to probable cause. *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979); *United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984).

**4.** The affidavit in support of the search warrant for the closed safe included information gained in the warrantless seizure of the residence. It goes without saying that this "fruit of the poisonous tree" is not to be considered in evaluating the existence of probable cause. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**5.** As we read the record, the district court denied Appellants' motion for a *Franks* hearing on the ground that probable cause existed even without the allegedly false statements in the supporting affidavit. Since we reverse on the issue of probable cause, we direct the district court on remand to determine whether Appellants can make a "substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978).

pellants' home in safes with cocaine and documents bearing the Appellants' names. They were further authenticated by the nature of their contents and the fact that they corroborated the testimony of government agents regarding the suspected drug-trafficking. We do not believe that the trial court abused its discretion in determining that the ledgers were sufficiently authenticated and relevant to come into evidence.

## III. *The Car Payment Receipt*

Appellant Huguez–Ibarra argues that the district court erred in admitting into evidence a receipt for an automobile in the name of "Juan Hughes." The receipt showed a cash payment of $4000.00 to Watson Chevrolet on March 18, 1988. It was found in the unlocked safe in the same room as the locked safe in which the cocaine was found. Appellant Huguez–Ibarra argues that the admission of this document violates the hearsay rule and the prejudice caused by it outweighs its probative value.

■■■ As was the case with the notebooks, the receipt falls outside of the hearsay doctrine because it was not offered for the purpose of proving the truth of its contents. *See United States v. Campbell,* 466 F.2d 529, 531 (9th Cir.), *cert. denied,* 409 U.S. 1062, 93 S.Ct. 571, 34 L.Ed.2d 516 (1972).

■■■ The fact that the name on the receipt was spelled differently than Huguez–Ibarra's was fully probed. Defense counsel was permitted to attempt to establish that the receipt belonged to Juan Beltran Hughes and not the Appellant. In light of the foregoing, the district court did not abuse its discretion in allowing the receipt into evidence.[6]

## IV. *The Videotape and Agent's Notes*

■■■ Huguez–Ibarra asserts that his conviction was based on an alleged violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and in light of this violation he should have been granted a mistrial or at the very least a continuance. It is well-settled that the suppression of evidence favorable to the accused upon request violates due process when the evidence is material to either guilt or punishment. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Since, however, we reverse the Appellants' conviction on other grounds, this argument is now moot. Appellants' counsel have had access to all the information that was sought and, in the event of a retrial, will be fully able to employ that information in Appellants' defense.

## V. *Huguez–Ibarra's Requested Jury Instruction*

■■■ Huguez–Ibarra asserts that the court erred in refusing to give the jury an instruction which would have allowed him to be convicted of possession of less than 500 grams of cocaine.

Huguez–Ibarra's theory of the case at the beginning of the trial was to ask the jury to find him guilty only of possession of the drugs he was caught dumping in the toilet and not conspiracy or possession of the three pounds in the safe. The district court refused to instruct the jury on possession of the cocaine recovered from the toilet because the indictment did not charge Huguez–Ibarra with possession of that cocaine. Instead, both Appellants were charged with conspiracy and possession with intent to distribute the three pounds of cocaine found in the safe.

We see no grounds for granting the request for instructing the jury on a crime unconnected with the charges in the indictment. The prosecution enjoys broad discretion in choosing what charges to bring

---

**6.** We note that a limiting instruction should have been given but was not, apparently due to the failure of defense counsel to request one. Prior to admitting the document the court asked defense counsel if he wanted a limiting instruction. Counsel moved to have the jury advised where the receipt was found but to withhold submitting the actual document to the jury. This motion was denied, and no limiting instruction was given. Huguez–Ibarra does not specifically raise the failure to give one on appeal.

against criminal defendants. Since the government did not charge Huguez–Ibarra with possession of the approximately 74 grams of cocaine recovered from the toilet, the jury could not have rationally convicted him of possession of that cocaine, and consequently there was no error in the refusal to instruct the jury on the "lesser charge." [7] *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Gonzalez*, 800 F.2d 895, 897 (9th Cir.1986).

## CONCLUSION

The judgment is REVERSED as to each count. The case is REMANDED to the district court for further proceedings consistent with this opinion.

---

**7.** Huguez–Ibarra seems to have recognized this by arguing in his closing presentation that his theory of the case had changed—that now it was "all or nothing," and that the jury could either convict him of possession of the three pounds or acquit him, but that it could not convict him for possession of the cocaine he was found dumping in the toilet.