2 F.3d 1158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James L. BEASLEY, Jr., Defendant-Appellant.
 No. 91-10438.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 1, 1993.
Decided July 8, 1993.
 
 Before FARRIS, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Defendant James L. Beasley appeals his jury conviction for conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. Sec. 846. He also appeals his sentence for the conspiracy conviction and for guilty pleas to violations of 18 U.S.C. Sec. 371 (conspiracy), 26 U.S.C. Sec. 7201 (tax evasion), 31 U.S.C. Secs. 5324(3) & 5322 (unlawful structuring of currency transactions), 18 U.S.C. Sec. 1014 (false statement in connection with a loan application), and 18 U.S.C. Secs. 1512 & 1515 (tampering with a witness). This court has jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 FACTS
 
 3
 The government offered testimony that Beasley was the leader of a large San Francisco-based drug operation. Several witnesses testified that they had seen Beasley negotiate large cocaine purchases and sales. There was testimony that he was in possession of large amounts of cash, up to $2,500,000, from drug sales on several occasions. Witnesses testified of Beasley's involvement in a 50 kilogram cocaine deal in June of 1987, a 75 kilogram deal in December of that year, and a 50 kilogram deal in March of 1989. The government presented an abundance of additional evidence, which will be discussed as relevant below.
 
 DISCUSSION
 I.
 
 4
 Beasley challenges the district court's decision to admit into evidence a drug ledger and a furniture tag taken from Carolyn Davis's purse. Beasley maintains that the documents are hearsay and that they were admitted improperly under the exception to the hearsay rule for statements of a coconspirator. In United States v. Huguez-Ibarra, 954 F.2d 546 (9th Cir.1992), this court ruled that as long as drug ledgers are not being admitted to prove the truth of the writings contained therein, they are not inadmissible evidence under the hearsay rules. Id. at 552. The court concluded that "such evidence may come in if there is a sufficient showing of relevance and authenticity and if its probative value outweighs undue prejudice." Id. at 552-53. Huguez-Ibarra clearly indicates that the documents were not hearsay. Therefore, we review the district court's determination that the evidence was relevant and its implicit determination that the evidence was not unduly prejudicial only for an abuse of discretion. Seeid. at 553; United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991).
 
 
 5
 Here, as in Huguez-Ibarra, the ledger and furniture tag were sufficiently authenticated. See 954 F.2d at 552-53. Moreover, the presence of a drug ledger and the furniture tag in Davis's purse was relevant to bolster the government's evidence and to disprove Davis and Frye's explanation as to why they were in Los Angeles. We simply cannot say that the district court abused its discretion in ruling that the ledger and furniture tag were relevant evidence. Furthermore, Beasley has failed to show any prejudice that substantially outweighed the evidence's probative value. Accordingly, we affirm the district court's decision to admit the documents into evidence.
 
 II.
 
 6
 Beasley also contends that the district court erred when it admitted statements made by Davis to the police when she was stopped at the Ontario airport. Before a statement can be admitted against a defendant as a statement of a co-conspirator, there must be a preliminary showing by independent proof of the conspiracy's existence and the declarant's and the defendant's participation in the conspiracy. United States v. Peralta, 941 F.2d 1003, 1006 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992). In addition, the statement must be made in furtherance and during the existence of the conspiracy. Id. Historically, this court has reviewed these preliminary determinations de novo. See United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988). However, the Supreme Court has suggested that these matters should be reviewed only for clear error. See Bourjaily v. United States, 483 U.S. 171, 175 & 181 (1987) (Court indicated that these preliminary determinations involved questions of fact and concluded that the factfinding was not clearly erroneous). We need not decide which standard applies here because the district court did not err in its conclusions as to these preliminary matters under either standard.
 
 
 7
 The only inquiry left then is whether the district court abused its discretion in determining to admit the evidence. See Peralta, 941 F.2d at 1006. Beasley points to nothing that would suggest that the district court has abused its discretion. The statements consisted of nothing more than Davis's contention that she was in Los Angeles on vacation. We conclude that the district court did not err by admitting the statements.
 
 III.
 
 8
 Beasley next contends that the government violated his rights under Brady v. Maryland, 373 U.S. 83 (1963), Federal Rule Criminal Procedure 16, and Roviaro v. United States, 353 U.S. 53 (1957), when it failed to inform him that one of the witnesses that he called to impeach a government witness had been a government informant. A prosecutor's duty to produce evidence under Brady is reviewed de novo. United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992).
 
 
 9
 In Brady the Supreme Court held that a defendant has a due process right to favorable evidence in the prosecution's possession that is material to guilt or punishment. 373 U.S. at 87. Beasley complains because the government failed to disclose material in its possession that proved valuable in impeaching Beasley's own witness. The thrust of Brady, however, is to ensure that exculpatory evidence is revealed to the defense, not to allow the defense to see all the incriminating information the government may have on the defendant. See 373 U.S. at 87-88. We conclude that inasmuch as no favorable information was withheld, there was no Brady violation. See Gordon, 844 F.2d at 1403 (favorable evidence is exculpatory or impeachment evidence).
 
 
 10
 Beasley also contends that Federal Rule of Criminal Procedure 16(a)(1)(C) required the government to disclose Graham's status as an informant prior to his testimony. The applicability of Rule 16 is reviewed de novo. United States v. Mandel, 914 F.2d 1215, 1218 (9th Cir.1990). We reject Beasley's challenge under Rule 16. Even assuming that Rule 16 did require the government to disclose Graham's status as an informant, Beasley failed to request the information as required under Rule 16. See United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir.1984).
 
 
 11
 Finally, Beasley maintains that the government's failure to inform him of Graham's informant status violated the requirements of Roviaro. In Roviaro, the Supreme Court held that when an informant's statement to the government contains exculpatory information, the government may be required to disclose the identity of the informant and to reveal the exculpatory information. 353 U.S. at 59-62. Here, however, Roviaro is inapplicable because Beasley knew Graham's identity and because the information he provided to officials incriminated, not exculpated, Beasley.
 
 IV.
 
 12
 Beasley argues that the government's cross-examination of witness Otis Graham exceeded the proper scope for cross-examination and violated this court's ruling in United States v. Crouch, 731 F.2d 621 (9th Cir.1984), cert. denied, 469 U.S. 1105 (1985). He maintains that the extrinsic evidence of prior inconsistent statements used by the government to impeach Graham was not sufficiently related to his testimony on direct and was otherwise improper. We review the district court's decision regarding the scope of cross-examination for an abuse of discretion. United States v. Brown, 936 F.2d 1042, 1048-49 (9th Cir.1991).
 
 
 13
 "[T]he trial court may permit cross-examination 'as to all matters reasonably related to the issues ... put in dispute by [a witness's] testimony on direct.' " United States v. Vasquez, 858 F.2d 1387, 1392 (9th Cir.1988), cert. denied, 488 U.S. 1034, and cert. denied, 489 U.S. 1029 (1989) (citations omitted). Moreover, rule 613 of the Federal Rules of Evidence clearly states that extrinsic evidence of a prior inconsistent statement may be admitted if the witness is afforded an opportunity to explain or deny the prior statement and the opposite party is permitted an opportunity to interrogate the witness thereon. Here, all this occurred. In addition, the court gave the jury a proper limiting instruction and restricted the prior statements the government was allowed to use. Our review convinces us that the district court did not abuse its discretion in determining the proper scope of cross-examination.
 
 
 14
 We also reject Beasley's contention that the government "impeached its own induced statements with inadmissible evidence" in violation of Crouch. Here the prior statements were properly admitted only to impeach Beasley's credibility as a witness. The government did not call Graham to testify in order to impeach his testimony and get inadmissible evidence before the jury. Crouch simply does not apply.
 
 V.
 
 15
 Beasley's next contention is that the government violated Brady when it disclosed the criminal history of government witness Richard Sanchez several days after he testified. He argues that the delay compromised the effectiveness of the impeachment of Sanchez. Again, we review a claim that Brady has been violated de novo. Monroe, 943 F.2d at 1011.
 
 
 16
 This court has held that no Brady violation occurs if evidence is disclosed to the defendant at a time when the disclosure remains of value. United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.1988) (court held no Brady violation because the evidence was disclosed during trial although after cross-examination of the "impeachable witness"); see also Gordon, 844 F.2d at 1403 (no violation when exculpatory evidence was provided during trial and the defendant was allowed to recall and reexamine witnesses). Here, Beasley was able to recall the witness and impeach him based on the criminal convictions. Moreover, his closing argument emphasized Sanchez's lack of credibility based on his previous convictions, which were "fresh" in the jurors' minds. Thus, we find that disclosure was made at a meaningful time and that no Brady violation occurred.
 
 VI.
 
 17
 Beasley also contends that the government violated the Jencks Act, 18 U.S.C. Sec. 3500, by failing to produce Sanchez's 1986 diary prior to his testimony on redirect. Generally, a lower court's handling of discovery matters pursuant to the Jencks Act is reviewed for an abuse of discretion. See United States v. Boshell, 952 F.2d 1101, 1104 (9th Cir.1991). Unfortunately, Beasley failed to raise this issue below, precluding any exercise of discretion by the district court. Thus, we hold that Beasley has waived this issue on appeal.[1] See United States v. Whitten, 706 F.2d 1000, 1012 (9th Cir.1983), cert. denied, 465 U.S. 1100 (1984).
 
 VII.
 
 18
 Next, Beasley argues that the district court erred by allowing the "introduction of a substantial amount of unnecessary and irrelevant lifestyle evidence." He argues that admission of the evidence violated Rules 403 and 404(b) of the Federal Rules of Evidence. We disagree and affirm the district court's decision.
 
 
 19
 It is well settled "that evidence of ... unexplained wealth is admissible in drug conspiracy trials if it creates a reasonable inference that the unexplained wealth came from the drug conspiracy." United States v. Miguel, 952 F.2d 285, 289 (9th Cir.1991); see also United States v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir.1987); United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir.1987). Beasley's claim that the unexplained wealth evidence introduced in this case somehow violates Rule 404(b) simply does not make sense. The government did not introduce character evidence, prior convictions, or bad acts as proscribed by that rule of evidence. Rather, the government presented evidence of Beasley's conduct during the period in which the conspiracy was alleged to have existed. Given Miguel, Patterson, and Crespo, we conclude that the evidence was relevant and admissible.
 
 
 20
 Beasley also seems to challenge the introduction of the unexplained wealth evidence under Rule 403. He argues that the government's financial evidence exceeded the proper scope for unexplained wealth evidence and included the admission of improper and highly prejudicial lifestyle evidence. A judge's determination to admit or exclude evidence under Rule 403 is reviewed for an abuse of discretion. Crespo, 838 F.2d at 1018. We conclude that the district court did not abuse its discretion by permitting the prosecution to use evidence of unexplained wealth to aid in establishing the existence of a conspiracy. See id.; Patterson, 819 F.2d at 1501.
 
 VIII.
 
 21
 Beasley also contends that the government "proved a multitude of separate conspiracies" rather than the single conspiracy charged in the indictment. He claims that the government's failure to prove a single conspiracy amounted to a fatal variance between the proof at trial and the indictment. Moreover, Beasley contends that the court erred when it failed to give a multiple conspiracy instruction sua sponte.
 
 
 22
 Whether the evidence proved a single conspiracy or multiple conspiracies is essentially a question of the sufficiency of the evidence. See United States v. Bibbero, 749 F.2d 581, 586 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985). The standard of review in considering a challenge to the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the government, any rational juror could have found a single conspiracy beyond a reasonable doubt. See Patterson, 819 F.2d at 1502. We must assume that the jury resolved all factual questions in a manner consistent with its verdict. See United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989).
 
 
 23
 While Beasley contends that much of the evidence was never tied to him, we disagree. The government presented considerable evidence that tied Beasley to all of the drug transactions and incidents in evidence at trial. Indeed, after reviewing the evidence, we are convinced that a rational juror not only could have found that the government succeded in proving the existence of a single conspiracy but probably would have. After all "the evidence need not exclude every hypothesis other than [that] a single conspiracy exists." Patterson, 819 F.2d at 1502.
 
 
 24
 Beasley also challenges the district court's failure to give a multiple conspiracies instruction sua sponte. Because Beasley neither objected to the conspiracy instructions nor requested an instruction on multiple conspiracies, he must show that the district court's failure to give such an instruction amounted to plain error. See United States v. Krasn, 614 F.2d 1229, 1235 (9th Cir.1980). Beasley relies on United States v. Gilley, 836 F.2d 1206 (9th Cir.1988), to support his contention that the district court erred. His reliance, however, is misplaced, and we find that the district court did not err by failing to give a multiple conspiracies instruction.
 
 IX.
 
 25
 Beasley contends that the district court also erred in refusing to grant a new trial. Beasley based his motion on "newly discovered evidence" that the government had withheld a 1987 affidavit that mentioned Carolyn Davis. We review a district court's refusal to grant a motion for new trial for an abuse of discretion. United States v. George, 960 F.2d 97, 101 (9th Cir.1992). The appellant carries a significant burden to show that the district court abused its discretion. United States v. Endicott, 869 F.2d 452, 454 (9th Cir.1989).
 
 
 26
 In order to prevail on his motion for new trial, Beasley must show (1) that the evidence was newly discovered and that it was unknown to him at the time of trial; (2) that the evidence is material; (3) that the evidence would probably have produced an acquittal; and (4) that the failure to discover the evidence was not due to a lack of diligence on his part. See United States v. Walgreen, 885 F.2d 1417, 1428 (9th Cir.1989). Putting aside all other obstacles to Beasley's success on this claim, and there are several, he cannot show that the affidavit would probably have produced an acquittal. We also hold that no Brady violation occurred with respect to the affidavit.
 
 X.
 
 27
 Next, Beasley challenges the district court's upward adjustment of his offense level by four points under U.S.S.G. Sec. 3B1.1(a) for his role as a leader or organizer of a criminal activity involving more than five participants. Beasley contends that the district court improperly considered collateral conduct, relied upon unsubstantiated hearsay and informant testimony, and failed to make sufficiently specific findings to support the adjustment. We review the district court's legal interpretations of the Guidelines de novo and its factual determinations for clear error. See United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 28
 Our review of the evidence considered by the district court in arriving at the upward adjustment indicates that the district court did not consider collateral conduct, only relevant conduct as directed by United States v. Lillard, 929 F.2d 500, 503 (9th Cir.1990) (trial court may consider all relevant conduct under Sec. 1B1.3 in making a determination of role in the offense under Sec. 3B1.1). Moreover, the district court did not err in considering hearsay testimony and informant testimony. Federal law clearly permits a judge to consider hearsay in sentencing a defendant. United States v. Fernandez-Vidana, 857 F.2d 673, 675 (9th Cir.1988). "Only when the hearsay is so inadequately supported that the 'factual basis for believing [it is] almost nil' can it be argued that the evidence should not have been considered" in sentencing. Id. (citations omitted). The district court concluded that the hearsay considered was reliable and sufficiently supported by other evidence. Beasley fails to point to anything that would cause us to question the district court's conclusion.
 
 
 29
 We also reject Beasley's argument that the district court should not have considered informant testimony in arriving at the upward adjustment. "A defendant challenging information used in sentencing must show such information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence." United States v. Messer, 785 F.2d 832, 834 (9th Cir.1986). Beasley has not borne this burden. The district court pointed to so much other evidence to support the adjustment that we cannot say that the informant testimony was the basis for the sentence.
 
 
 30
 Finally, we find no merit in Beasley's contention that the district court's findings supporting the adjustment were insufficient. The court specifically found that Beasley "was a leader and organizer of a criminal conspiracy that included five or more participants...." Such a finding is sufficient; indeed, it exceeds the requirements of this circuit. See United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990). Thus, we affirm the four level increase in Beasley's offense level under Sec. 3B1.1(a) for his role as a leader or organizer of a criminal activity with more than five participants.
 
 XI.
 
 31
 Beasley argues that the district court erred in determining the quantity of cocaine for sentencing purposes. We review the district court's legal interpretations of the Guidelines de novo and its factual determinations for clear error. See Chapnick, 963 F.2d at 226.
 
 
 32
 Courts have permitted sentencing judges to rely upon unexplained wealth, cash expenditures, and comparable sales data in making drug quantity determinations under the Guidelines. See United States v. Haren, 952 F.2d 190, 199 (8th Cir.1991) (permitting consideration of currency being counted by the defendant); United States v. Atterson, 926 F.2d 649, 654 (7th Cir.1991) (relying in part on unexplained wealth to determine the quantity of drugs). In addition, application note 12 to Sec. 2D1.1 of the Guidelines states:
 
 
 33
 In making this determination, [quantity of drugs] the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size and capability of any laboratory involved.
 
 
 34
 Because the district court adhered to these established standards, we find that no error was committed in the quantity determination.
 
 XII.
 
 35
 Finally, Beasley argues that the district court erred in denying him a two-point reduction for acceptance of responsibility under Sec. 3E1.1. The question of whether a defendant has accepted responsibility is a factual determination reviewed for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990). We affirm the district court's denial of the adjustment for acceptance of responsibility.
 
 
 36
 Application note 2 to section 3E1.1 indicates that the "adjustment is not intended to apply to a criminal defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits and expresses remorse." The district court concluded that the "defendant, quite simply, has not accepted responsibility for the most serious offense for which he has been convicted...." While Beasley arguably tried to accept responsibility at his sentencing hearing, the court was justified in denying the adjustment based on his acceptance only at that late stage of the proceeding. See U.S.S.G. Sec. 3E1.1, comment (n. 1(g) & 3).
 
 CONCLUSION
 
 37
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Even were we to consider the merits of Beasley's Jenck's claim, we have grave doubts whether he could show the prejudice required for us to reverse. See, e.g., Boshell, 952 F.2d at 1106 ("Appellant must show prejudice to be entitled to reversal.")