24 F.3d 252
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Luis Fernando ZURITA, aka Heriberto Herrera, aka Heriberto
Herrera Perez, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Camilo RESTREPO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan RAMIREZ, Defendant-Appellant.
 Nos. 92-50437, 92-50438, 92-50453.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided May 5, 1994.
 
 Before: TANG, CANBY, and BEEZER, Circuit Judges.
 
 MEMORANDUM
 
 1
 Defendants Luis Fernando Zurita, Juan Ramirez, and Juan Camilo Restrepo appeal their jury convictions for possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Zurita and Ramirez also appeal their jury convictions for conspiracy to distribute and to possess with intent to distribute cocaine in violation Secs. 846 and 841(a)(1). Zurita appeals his sentence under the United States Sentencing Guidelines. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 2
 * In February 1991, acting on an informer's tip, Riverside police began surveillance of two residences in Fontana, California ("Lafayette Court" and "Kaiser Court"). During several months of surveillance, the officers observed defendants Zurita and Ramirez engage in various activities associated with drug trafficking. These activities included using pay phones in various locations, using paging devices, visiting mail drops in locations distant from their residence, disposing of garbage away from their home, engaging in counter-surveillance and tandem driving, and using vehicles registered to other persons who had only mail boxes for addresses.
 
 
 3
 On October 16, 1991, officers observed what appeared to be an exchange of drugs by means of a car switch in a grocery store parking lot. Zurita and Ramirez left a Toyota pickup truck in the parking lot and went into the store. Restrepo emerged from the store and drove away in this pickup truck. Officers pulled Restrepo over, brought in a dog which alerted for the presence of narcotics, and obtained a search warrant. They found 300 kilograms of cocaine, a drug ledger, and a cellular phone in the truck.
 
 
 4
 The officers also obtained search warrants for the Lafayette Court and Kaiser Court residences. At Lafayette Court, they found 659 kilograms of cocaine, drug ledgers, pagers, a scale, a firearm, and identification for Zurita and Ramirez. At Kaiser Court, they found 1,790 kilograms of cocaine.
 
 
 5
 Zurita and Ramirez both admitted living at Lafayette Court. Zurita further admitted that there were 659 kilograms at the house, that he had received a call to deliver 300 kilograms that day, and that he was to receive $50 per kilogram for the delivery. Zurita and Ramirez both admitted that Zurita was paying Ramirez to drive the pickup truck.
 
 
 6
 Zurita was convicted of conspiracy, possession of the 300 kilograms in the truck, and possession of the 659 kilograms at Lafayette Court. He was acquitted of possession of the cocaine at Kaiser Court, as well as of two firearms counts. Ramirez was convicted of conspiracy and possession of the 300 kilograms in the truck. He was acquitted on the four other counts. Restrepo was convicted only of possession of the 300 kilograms in the truck.
 
 II
 
 7
 Defendants argue that the government violated their equal protection rights by exercising four peremptory challenges to strike all but one Hispanic from the panel. Batson v. Kentucky, 476 U.S. 79 (1986). The remaining Hispanic panel member served on the jury. The government used the remainder of its nine peremptories to challenge non-Hispanic jurors.
 
 
 8
 To establish a claim of discriminatory jury selection, defendants must first establish a prima facie case of purposeful discrimination. United States v. Chinchilla, 874 F.2d 695, 697 (9th Cir.1989). The defendant must show (1) that he is a member of a cognizable racial group; (2) that the prosecutor used peremptory challenges to exclude members of that racial group; and (3) that the circumstances raise an inference that the prosecutor was acting on the basis of race. Id. If the defendant makes this showing, the burden shifts to the prosecutor, who must be able to articulate a race-neutral reason for striking the juror. Id.
 
 
 9
 We need not decide whether the district court erred in concluding that defendants had not made out a prima facie case. A prima facie case merely shifts to the government the burden of providing a race-neutral explanation for its challenges, and in this case the government provided such an explanation.
 
 
 10
 The district court determined that the government's explanations were race-neutral. The district court's findings are entitled to great deference. United States v. Bishop, 959 F.2d 820, 826 (9th Cir.1992). We agree that the government's reasons for exercising peremptories were race-neutral. See, e.g., United States v. Vaccaro, 816 F.2d 443, 457 (9th Cir.), cert. denied, 484 U.S. 914 (1987); United States v. Power, 881 F.2d 733, 740 (9th Cir.1989); United States v. Lewis, 837 F.2d 415, 417 (9th Cir.), cert. denied, 488 U.S. 923 (1988).
 
 III
 
 11
 Zurita contends that the district court erred in admitting certain drug ledgers, because the documents were admitted into evidence as proof of the matters asserted therein.
 
 
 12
 Where drug ledgers are admitted to show the truth of the matters asserted in them, the government must lay a foundation sufficient to allow their admission under various exceptions to the rule against hearsay. United States v. Huguez-Ibarra, 954 F.2d 546, 552 (9th Cir.1992). Where ledgers are admitted only to show "that the type of activities charged in the indictment were being carried out in the residence," the hearsay rule does not apply, and no foundation concerning authorship need be laid. Id. The evidence is admissible if there is a sufficient showing of relevance and authenticity, and if its probative value outweighs the potential for prejudice. Id. We review the district court's decision to admit the evidence for abuse of discretion. Id. at 553.
 
 
 13
 We find no abuse of discretion here. The district court properly instructed the jury that the ledgers were admissible only to show that the types of activities alleged in the indictment were being carried out in the vehicle and that the ledgers could not be considered for the truth of the matters asserted in them.
 
 
 14
 The crux of Zurita's argument is that because cocaine was found in the pickup truck and the two residences, documents referring to cocaine in similar quantities would only be considered for the truth of the matters asserted in them. We reject this argument. We have previously held that ledgers are admissible when they are located in proximity to drugs. Huguez-Ibarra, 954 F.2d at 553-54.
 
 
 15
 Zurita also argues that the government made improper arguments about the ledgers in its closing. Reference to the drug ledgers to link Zurita to the Lafayette residence, to his briefcase, to his garage, and to the pickup truck is not impermissible. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1383 (9th Cir.1991).
 
 IV
 
 16
 Ramirez and Zurita argue that the government failed to prove the conspiracy charged in the indictment, proving instead either a "mini-conspiracy" between Zurita and Ramirez which lasted only a few hours, or two separate conspiracies.
 
 
 17
 We review the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found a single conspiracy beyond a reasonable doubt. United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984). The basic test for a single conspiracy, as opposed to multiple conspiracies, is whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy. Id. The test "comprehends the existence of subgroups or subagreements." United States v. Zemek, 634 F.2d 1159, 1167 (9th Cir.1980), cert. denied, 452 U.S. 905 (1981). The evidence need not exclude every hypothesis other than that of a single conspiracy. Arbelaez, 719 F.2d at 1457-58.
 
 
 18
 In assessing whether the evidence supports the jury's finding of a single conspiracy, we consider (1) the nature of the scheme, (2) the identity of the participants, (3) the quality, frequency, and duration of each conspirator's transactions, and (4) the commonality of time and goals. United States v. Morse, 785 F.2d 771, 774-75 (9th Cir.), cert. denied, 476 U.S. 1186 (1986). Once the government has established that a conspiracy existed, "evidence of only a slight connection is necessary to convict a defendant of knowing participation in it." Arbelaez, 719 F.2d at 1458 (quoting United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir.), cert. denied, 452 U.S. 920 (1981)). This evidence must be sufficient to show that the defendant had reason to know of the scope of the conspiracy and had reason to believe that his own benefits were dependent upon the success of the entire venture. Arbelaez, 719 F.2d at 1459; see also, United States v. Brown, 912 F.2d 1040, 1043 (9th Cir.1990).
 
 
 19
 Zurita argues that there were two separate conspiracies, one involving the Lafayette Court residence and one involving the Kaiser Court residence. Because Zurita was acquitted of possessing the cocaine and the pistol found at the Kaiser Court residence, he argues that the jury must have found two distinct conspiracies.
 
 
 20
 We reject this argument. First, the district court properly instructed the jury on the issue of multiple conspiracies. An appropriate multiple-conspiracy instruction "largely attenuate[s] any prejudice flowing from the establishment of the variance." United States v. Griffin, 464 F.2d 1352, 1358 (9th Cir.), cert. denied, 409 U.S. 1009 (1972).
 
 
 21
 More importantly, the evidence, viewed most favorably to the government, supports the government's assertion of a single conspiracy. The government presented more than sufficient evidence to link Zurita with persons and drugs found at the Kaiser Court residence.
 
 
 22
 Ramirez argues that the evidence, as to him, showed only a "mini-conspiracy" of a few hours' duration. He relies largely on his having been hospitalized for eight days prior to October 16, and states that he could not possibly have helped load the pickup truck with 25-kilogram packages of cocaine. He also relies on the jury's verdict acquitting him of possession of the cocaine and the firearms at both residences.
 
 
 23
 As explained above, the multiple-conspiracies instruction substantially reduces the risk of a "spillover" infecting the jury's deliberations. We also conclude that there was sufficient evidence to link Ramirez to other conspirators, both indicted and unindicted, to the Kaiser Court residence, and to the delivery in October.
 
 
 24
 Because we conclude defendants have failed to establish a variance between the conspiracy charged and the conspiracy proved, we need not, and do not, reach Zurita's claim that there was a substantial risk that the jury reached a non-unanimous verdict.
 
 V
 
 25
 Defendants argue that the proof at trial varied impermissibly from the charge in the indictment. A variance of proof occurs when the charging terms of the indictment are not challenged, but the evidence offered at trial proves facts materially different from those alleged, resulting in prejudice to the defendant. United States v. Alvarez, 972 F.2d 1000, 1004 (9th Cir.1992) (per curiam), cert. denied, 113 S.Ct. 1427 (1993).
 
 
 26
 The indictment consists of several charges related to "a mixture or substance containing a detectable amount of cocaine," in violation of 21 U.S.C. Sec. 841(a)(1). The government proved the defendants possessed cocaine hydrochloride. Defendants urge us to reverse on the ground that "cocaine hydrochloride" is a different chemical substance from "cocaine." We have previously rejected this argument. United States v. Soto, 1 F.3d 920, 922-23 (9th Cir.1993).
 
 VI
 
 27
 Zurita argues that he was entitled to a lesser included offense instruction related to the cocaine found in the Lafayette Court residence. He contends a rational jury could have found him guilty of violating 21 U.S.C. Sec. 856(a), which makes it unlawful to manage or control a building for storing, distributing, or using a controlled substance.
 
 
 28
 To demonstrate that he was entitled to a lesser included offense instruction, Zurita must show "(1) that the elements of the lesser included offense constitute a subset of the elements of the crime charged, and (2) that, given the evidence adduced at trial, a rational jury could find him guilty of the lesser offense, yet acquit him of the greater." United States v. Lopez, 885 F.2d 1428, 1436-37 (9th Cir.), cert. denied, 493 U.S. 1032 (1990).
 
 
 29
 Neither Sec. 841(a)(1) nor Sec. 846 contain an element referring to maintaining, managing, controlling, or owning a place, building, room or enclosure. The element of Sec. 856 which focuses on a designated place for drug-related activity precludes it from being a subset of possession or conspiracy charges, neither of which include an element related to a place or building. Conviction under Sec. 856 would require additional proof. Nor do we agree that a rational jury would be likely to find Zurita guilty of Sec. 856 but not guilty of either possession or conspiracy.
 
 VII
 
 30
 Zurita challenges the validity of the search and seizure of the pickup truck Restrepo was driving when he was arrested. Zurita acknowledges he has no possessory interest in the truck, but argues that he has standing to challenge the search based on the joint venture exception announced in United States v. Padilla, 960 F.2d 854 (9th Cir.1992). This argument has no merit in light of the Supreme Court's reversal of Padilla. United States v. Padilla, 113 S.Ct. 1936 (1993).
 
 VIII
 
 31
 Zurita argues that the district court erred in admitting expert drug-courier profile evidence. The district court's decision to admit the testimony will be upheld unless manifestly erroneous. United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.), cert. denied, 487 U.S. 1223 (1988).
 
 
 32
 Fed.R.Evid. 702 permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." This court has frequently upheld the admission of law enforcement officers' testimony that the defendant's activities accorded with the usual methods of drug trafficking. See, e.g., United States v. Espinosa, 827 F.2d 604, 613 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988); United States v. Maher, 645 F.2d 780 (9th Cir.1981) (per curiam). The district judge did not manifestly err in allowing expert testimony to interpret the large amount of circumstantial evidence in this case.
 
 IX
 
 33
 Zurita's sentence was adjusted upward three levels under U.S.S.G. Sec. 3B1.1(b), which applies to persons who are managers or supervisors, but not organizers or leaders of criminal activity involving five or more participants. Zurita contends that he was not a manager in a group of five or more persons.
 
 
 34
 The burden is on the government to prove defendant's management role by a preponderance of the evidence. United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990). We review the district court's findings of fact for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 35
 To be a manager, the defendant need only have exercised authority over one other participant. United States v. Barnes, 993 F.2d 680, 685 (9th Cir.1993). Participants may be criminally responsible for purposes of the adjustment whether or not they were convicted. Sec. 3B1.1 n. 1.
 
 
 36
 The government sufficiently established a group of five or more participants. In addition to the three defendants convicted, the government identified at least two other participants in the scheme. The evidence also amply supports the conclusion that Zurita was a manager. We find no error in the district court's conclusion that Zurita was a manager.
 
 X
 
 37
 We find no merit in defendants' contentions on appeal. For all of the foregoing reasons, defendants' convictions and sentences are affirmed.
 
 
 38
 AFFIRMED.
 
 
 39
 ---------------
 
 
 
 * This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.