69 F.3d 545
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arlene NEWLAND, Antonio Hernandez-Menendez, Santos
Hernandez-Menendez, Nick Newland, Defendants-Appellants.
 Nos. 93-10593, 93-10596, 93-10657 and 93-10685.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1994.
Decided July 14, 1995.
 
 1
 Before: POOLE and NOONAN, Circuit Judges; HAGEN, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 In 1988, the government uncovered, in and around Tucson, Arizona, evidence of a criminal organization involved in the importation of cocaine and marijuana from Mexico through Douglas, Arizona. Over a three year period, the organization imported thirty-five tons of cocaine and an unspecified amount of marijuana into the United States. Proceeds from the operation netted nearly $100,000,000--all returned to the organization's coffers in Mexico. Joaquin Guzman of Guadalajara, Mexico, was identified as the "kingpin" of the organization. His immediate subordinates included Liborio Nunez Aguirre, Jorge Rodriguez, Luis Ruiz-Valenzuela, Gabriel Ceballos, Mario (Hugo) Gallegos, and Ramon Rodriguez. At the time of the appellants' sentencing, all of the above remained fugitives from the law with the exception of J. Rodriguez and Ceballos who were on federal detainer in Los Angeles County, California. The organization's command and control center was located in Agua Prieta, Sonora, Mexico.
 
 
 4
 The four appellants were charged and tried for a number of crimes associated with the organization's activities. Each of the appellants appeals his or her convictions, contending that the government presented insufficient evidence to support their various convictions. The government's case largely depended on the testimony of Eduardo Acosta, who was the owner of a motor home containing $1,586,234 concealed under a false floor. Acosta pleaded guilty to conspiracy to possess with intent to distribute more than five kilograms of cocaine and testified for the government in this case. His veracity and credibility were sharply challenged by the defendants, but insufficiently for an appellate court to disregard the evidence he presented to the jury.
 
 
 5
 We consider each defendant's appeal in turn.
 
 Antonio "Tony" Hernandez-Menendez
 
 6
 Acosta testified that Tony Hernandez-Menendez recruited him into the drug ring, describing the type of work involved and the specific needs of the organization and introducing him to Jorge Rodriguez as a boss. This evidence alone, which is confirmed in various circumstantial detail, is sufficient to support Hernandez-Menendez's convictions of conspiracy to import cocaine, conspiracy with intent to distribute marijuana and cocaine, two counts of possession with intent to distribute cocaine, and two counts of importation of cocaine. The distribution scheme was tied to the importation scheme. He is liable for the substantive crimes committed by his coconspirators in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 647 (1946).
 
 Santos Hernandez-Menendez
 
 7
 Acosta testified that on April 27, 1988 Santos Hernandez-Menendez delivered drugs to Jorge Rodriguez from the Double Adobe Ranch, where the organization had stored the drugs. Santos also engaged in counter-surveillance for the organization at the ranch. He also was a participant in the purchase of a 1983 Cruise Air Motor Home, used by the organization and outfitted with a false bottom. The evidence is sufficient to convict him of knowing participation in conspiracy to import cocaine and conspiracy to possess with intent to distribute cocaine, two counts of importation of cocaine, and two counts of possession of cocaine with intent to distribute. He challenges his sentence, arguing that he should be given a two point reduction for a role as a minor participant and that the quantity of drugs seized after his incarceration on June 29, 1988 should not be attributed to him. However, the district court did not err in finding that he did not play a minor role and he is accordingly not insulated from liability for the drugs found after his incarceration. United States v. Navarro, 979 F.2d 786, 788 (9th Cir.1992).
 
 Nick Newland
 
 8
 The evidence against Nick Newland is convergent. In October, 1987 he began to negotiate the purchase of a warehouse on 37th Street in Tucson, Arizona. He falsely told the seller of the warehouse that he was representing boxers from California and that the warehouse would be used to sell decorative fountains. He closed the transaction in December, 1987 with five cashier's checks, each less than $10,000 and totaling $39,000. The purchaser of the checks and the new title holder of the warehouse was Santa Barbara Realty Incorporated, a corporation which did business out of Newland's home and of which Newland represented himself as the alter ego. This corporation filed no income tax returns between October, 1987 and July, 1988. In April of 1988 the warehouse was raided by police and a large amount of marijuana found. Eight days after the raid Newland received a cash payment of rent for the warehouse in the amount of $9,000. He subsequently received $45,000 more, all of these payments being made in cash and his Rent Receipt Book providing no name on the receipts to show who had made the payments.
 
 
 9
 In the period November and December of 1987 to January, 1988 Newland also purchased three motor homes. Payment for the first was for $16,000 in cash and the title was in his name. Payment for the second was for $20,000 in cash with Santos Hernandez-Menendez signing one of the sale's documents. The title was taken in the name of Santa Barbara Realty Incorporated. Payment for the third was for $33,268.65, paid in cash by Jorge Rodriguez. The title was put in the name of Santa Barbara Realty. Also during this period Newland paid $20,000 toward the purchase of a residence in Tucson for Jorge Rodriguez. Two of the motor homes were later found by the government and were discovered to contain false bottoms. Santa Barbara Realty's assets, including the warehouse and the two motor homes, increased by $215,968.65 in the period from October, 1987 to July, 1988.
 
 
 10
 Newland challenges the admission of the rent receipt book as inadmissible hearsay. The rent receipt book was admissible because it was adopted by Newland. United States v. Carrillo, 16 F.3d 1046, 1049 (9th Cir.1994), and because it was circumstantially authenticated, United States v. Huguez-Ibarra, 954 F.2d 546, 552 (9th Cir.1992).
 
 
 11
 While Newland maintains his innocence, a reasonable jury could find beyond a reasonable doubt that the alter ego of a closely-held corporation which has no declared source of income, but has a substantial increase in assets, who pays cashier's checks for a warehouse in a way that avoids currency transaction reports, who facilitates cash transactions for three motor homes, two of which are later discovered in circumstances indicating they have been used for drug smuggling, who pays $20,000 as a down payment on the house to be owned by one of the bosses in the drug ring, knows that he is laundering money for the ring and in this way aiding and abetting the drug conspiracy. In the context of these activities Acosta's testimony is telling that Rodriguez introduced Acosta and Warner-Alvarez to Nick Newland as "the ones who are going to be working for us." There was sufficient evidence to convict him of money laundering and, as an aider and abettor, of conspiracy to import cocaine and of conspiracy to possess with intent to distribute marijuana and cocaine. However, as an aider and abettor he cannot be held liable under a Pinkerton theory for the subsequent acts of his coconspirators, Hernandez v. United States, 300 F.2d 114, 121 n. 17 (9th Cir.1962), and so his convictions of importation of cocaine, of possession with intent to distribute cocaine, and of possession with intent to distribute marijuana must be reversed.
 
 Arlene Newland
 
 12
 The evidence against Nick Newland's wife, Arlene, was exiguous. The jury convicted her on all counts, but the district court set aside her convictions of conspiracy to import controlled substances, conspiracy to import marijuana and cocaine with intent to distribute, possession of marijuana with intent to distribute, and possession of marijuana and cocaine with intent to distribute. The court left undisturbed her convictions of three counts of money laundering. We are unable to see how a rational jury could conclude beyond a reasonable doubt that she was guilty of money laundering.
 
 
 13
 The evidence against her is that she signed the purchase agreement for the warehouse as secretary/treasurer of Santa Barbara Realty. She came into the transaction at the last minute and nothing indicates that she knew anything of its background or that she participated in her husband's lying account of the presumable purchasers and their purpose. She also signed the purchase agreement for one of the three motor homes as secretary/treasurer of Santa Barbara Realty and delivered one of the five cash payments for this vehicle. While the delivery of the cash can be said to be suspicious, it does not prove beyond a reasonable doubt that she knew that she was concealing the proceeds of illegal activities or that she was intending to conceal the true purchaser. Accordingly, her convictions of money laundering must be reversed.
 
 
 14
 We have considered the other contentions of the appellants and find them to be without merit.
 
 
 15
 In summary, we AFFIRM the convictions of Antonio Hernandez-Menendez. We AFFIRM the convictions and sentence of Santos Hernandez-Menendez. We REVERSE Nick Newland's convictions for importation of cocaine, possession with intent to distribute cocaine, and possession with intent to distribute marijuana but AFFIRM his money laundering convictions and convictions of conspiracy to import cocaine and conspiracy to possess with intent to distribute marijuana and cocaine. We REMAND so that he may be resentenced on the counts of conviction. Finally, we REVERSE the convictions of Arlene Newland.
 
 
 
 *
 The Honorable David Warner Hagen, United States District Judge, District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3