109 F.3d 1493
 46 Fed. R. Evid. Serv. 1122, 97 Cal. Daily Op.
Serv. 2515,
97 Daily Journal D.A.R. 4443
UNITED STATES of America, Plaintiff-Appellee,
v.
0.59 ACRES OF LAND, more or less in the County of Pima,
State of Arizona; Frank Gee; Verne Gee, as
Trustees of Frank and Verne Gee
Revocable Trust,
Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
0.46 ACRES OF LAND, more or less, in the County of Pima,
State of Arizona, et al.; Jack Sheaffer; John L.
Low, Defendants-Appellants.
 Nos. 95-16582, 95-16601.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1996.
Decided April 3, 1997.
 
 Thomas M. Parsons, Stubbs & Schubart, Tucson, Arizona, for defendants-appellants.
 Jacques B. Gelin, U.S. Department of Justice, Appellate Section, Environmental & Natural Resources Division, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona, William D. Browning, District Judge, Presiding. D.C. Nos. CIV-92-00154-WDB, CIV-92-00157-WDB.
 Before: RONEY,* Senior Circuit Judge, BEEZER and TROTT, Circuit Judges.
 RONEY, Senior Circuit Judge:
 
 
 1
 The landowners appeal a judgment awarding them less compensation than claimed for the Government's declaration of easements over two separate tracts of land. A Government expert's appraisal report was put before the jury with several pieces of inadmissible evidence attached. Because this rendered the trial unfair to the defendant landowners, we reverse.
 
 
 2
 In March 1992, the United States filed complaints and declarations of taking on behalf of the Bureau of Reclamation to acquire permanent easements over a 33.31-acre tract of land owned by Frank and Verne Gee (Gee tract) and a 3.94-acre tract owned by Jack Sheaffer and John Low (Sheaffer tract). The easements were part of the construction of a high-voltage power line needed to operate pumping equipment for the Central Arizona Project (CAP), a 300-mile-long water delivery project transporting Colorado River water to central and southeastern portions of Arizona. The easements were a 10-foot strip across the Gee tract comprising 0.59 acres and a 25-foot strip across the Sheaffer tract comprising 0.46 acres. The condemnation cases for the two tracts were consolidated for trial.
 
 
 3
 The Government offered into evidence the 106-page and 77-page appraisal reports of Jay Vance, its valuation witness for each of the two properties. The report had attached several items which the Government correctly concedes would not be admissible if offered directly into evidence: (1) a tax assessor's opinion, (2) a letter expressing an opinion of a non-expert homeowner, (3) a letter expressing an intent to purchase property, (4) 19 and 23-year-old purchase prices of the properties, and (5) an unscientific homeowner survey on the effect of the electromagnetic fields (EMFs) generated by the power lines. The trial court erroneously overruled the objections as to the first three items. The opinion of a deputy assessor for the county treasurer that the 115-kv transmission line would not change assessed value of the property for tax purposes was incompetent and prejudicial in a condemnation proceeding. See United States v. Certain Parcels of Land, 261 F.2d 287, 289 (4th Cir.1958); United States v. Delano Park Homes, 146 F.2d 473, 474 (2d Cir.1944). The district court itself stated that tax assessments are wrong in 98 percent of cases but, nonetheless, allowed the evidence in this case. The letter from a homeowner expressing her lay opinion about the effects of EMFs on her estimate of home value and a letter containing a mere offer to buy "comparable" property were both plainly inadmissible. See United States v. Dillman, 146 F.2d 572, 575 (5th Cir.1944).
 
 
 4
 As to the fourth and fifth items, although clearly inadmissible, there is some question as to whether the defendants could obtain a reversal on those items alone. The district court correctly ruled that the 23-year-old purchase price of the Gee tract and the 19-year-old purchase price of the Sheaffer tract were inadmissible. See 4 Nichols on Eminent Domain, § 12B.04 (3d Ed.1990). Due to an alleged inadvertent mistake of the Government's trial counsel, however, the redaction ordered by the district court was not complete. The purchase price evidence was present in the exhibits that went before the jury. The Government argues the landowners' counsel waived error by failure to review the exhibit prior to its entry into evidence.
 
 
 5
 No specific objection was made to the homeowner's survey on the effect of EMFs, which was prepared by a non-witness of unknown qualifications in violation of Rule 703, and would not meet the Daubert standards for scientific evidence. It is third-hand inadmissible hearsay. The Government argues there was no plain error. See Fed.R.Evid. 103(d); McClaran v. Plastic Industries, 97 F.3d 347, 357 (9th Cir.1996).
 
 
 6
 We need not reach the waiver issue in either case, even though those items could contribute to an unfair verdict, because the admission of the other three properly objected to items discussed above requires reversal. Although any single item standing alone might be insufficient to require reversal, the cumulative effect could well have caused an unfair award.
 
 
 7
 The jury awarded substantially less compensation than claimed by the landowners based upon the testimony of their expert: $286,500 for the easement across the Gee tract and $152,325 for the Sheaffer tract. The Government experts testified that just compensation should be $2,000 and between $21,500 and $31,500 for the two tracts respectively. The jury awarded $18,400 for the Gee tract and $34,000 for the Sheaffer tract.
 
 
 8
 Of course, an expert may base his opinion at trial on inadmissible facts and data of a type reasonably relied upon by experts in his field. Fed.R.Evid. 703. The rules do not specifically provide for the admission into evidence of the otherwise inadmissible evidence relied upon by the expert. See Michael H. Graham, Federal Practice and Procedure § 6651, Bases of Opinion Testimony by Experts (1992).
 
 
 9
 When inadmissible evidence used by an expert is admitted to illustrate and explain the expert's opinion, however, it is "necessary for the court to instruct the jury that the [otherwise inadmissible] evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence." Paddack v. Dave Christensen, Inc., 745 F.2d 1254 (9th Cir.1984). No such limiting instruction was given to the jury in this case. Without this careful handling, inadmissible evidence under the Rules of Evidence cannot be properly admitted simply by attachment to an appraiser's report. In any event, the specific items challenged by the landowners are not of the kind that might be admitted in connection with the expert's testimony, regardless of the presence of a limiting instruction.
 
 
 10
 Inasmuch as there will be a retrial, we need to address issues raised on appeal that may reappear in the subsequent trial. The district court correctly ruled on the remaining three issues raised on this appeal.
 
 
 11
 First, the district court denied the landowners' motion in limine for an order excluding from evidence any reference to the preexisting Tucson Electric & Power (TEP) 45-kv transmission line within a right of way abutting landowners' property. The landowners argued that the Government selected the existing alignment of the TEP lines, condemned additional adjacent lands, contracted with TEP to construct the project by building the 115-kv poles and circuits, and relocated TEP's old 46-kv line to the new facility. This, the landowners contend, made TEP the Government's agent for eminent domain purposes. The district court disagreed and held that evidence of the condition of condemned land is relevant and the court could not artificially increase or decrease the value of the condemnees' land by ignoring a condition that the Government did not create. United States v. Virginia Elec. & Power Co., 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961), holds that the value of the easement must be neither enhanced nor diminished by the special need that the Government had for it. While the Government is barred from first driving down the value of property it intends to acquire, see 42 U.S.C. § 4651(3) (codifying Virginia Electric ), the landowners cite no authority that a preexisting condition not created by the federal government must be excluded from the compensation calculus.
 
 
 12
 Second, in charging the jury, the district court committed no error in refusing to give the following five instructions requested by the landowners: (1) that the fair market value of the property may be based on an assumption and need not be shown by identifying a specific buyer; (2) that the jury may consider the effect annoyance, inconvenience, perceived danger, and unsightliness caused by the construction or presence of high voltage lines may have on an intended purchaser's estimate of value; (3) that the jury may disregard the effect of the preexisting TEP 46-kv line on the before condemnation value if it finds that the TEP line was either temporary or existed in violation of law or (4) that the TEP line is incorporated as part of the Government project; and (5) that the jury may award just compensation for physical invasion (EMFs) of the landowners' property by the Government outside the easement condemned.
 
 
 13
 On the first and second instructions concerning fair market value and the effect of high voltage power lines, the record reveals that the landowners did not contest the district court's conclusion at the charging conference that these requested instructions were adequately covered by instructions already being given.
 
 
 14
 The third and fourth instructions concerning the preexisting TEP power line were properly refused on the same basis upon which the landowners' motion in limine to exclude evidence of the TEP 46-kv line was properly denied.
 
 The fifth requested instruction was this:
 
 15
 You must award compensation for the physical invasion of Defendants' properties by the United States outside the easements condemned under the U.S. Constitution.
 
 
 16
 The landowners rely exclusively on Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), for this instruction. In Loretto, the Supreme Court held that a New York statute which allowed a cable company to install cable approximately 30 feet in length across the roof top and sides of an apartment building was a taking because it was a physical occupation of the property, albeit a de minimis intrusion. While the landowners cite testimony that EMFs constitute a physical presence on the property, they do not cite any cases extending Loretto on this point. Further, the landowners do not articulate a distinction between their damages under this theory and damages available for the diminution of value due to perception of EMFs, severance damages, upon which the jury was instructed.
 
 
 17
 Third, the district court granted the Government's motion in limine to exclude evidence concerning prices paid by the Government for properties similar to those condemned in these cases. This Court held in United States v. 10.48 Acres of Land, 621 F.2d 338, 339 (9th Cir.1980), that "[t]he price paid by the condemnor in settlement of condemnation proceedings or in anticipation of such proceedings is inadmissible to establish value of comparable land...." 10.48 Acres of Land holds further that the only exception to this rule are cases where (1) the sale is voluntary or (2) the fact that parties were condemnor and condemnee was not known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings. Id. at 339-40. Neither exception is present in this case.
 
 
 18
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by designation