**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**J.R. GONZALES, Defendant–Appellant.**

**No. 00–10514.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 2002.

Filed Sept. 30, 2002.

908

---

Hillary A. Fox, Assistant Federal Public Defender, Oakland, CA, for the defendant-appellant.

Laurie Kloster Gray, Assistant United States Attorney, San Francisco, CA, for the plaintiff-appellee.

Before HUG, CUDAHY * and TASHIMA, Circuit Judges.

## OPINION

CUDAHY, Circuit Judge.

J.R. Gonzales was convicted of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); being in possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He was sentenced to 144 months in prison. He appeals his conviction and sentence on the grounds that: (1) the district court erred in admitting evidence that was otherwise inadmissible, solely on the ground that an expert was relying on it, (2) the district court erred in admitting expert testimony on Gonzales's mental state, (3) the district court erred in concluding that all of the drugs seized from Gonzales were for distribution, and (4) section 922(g) ex-

ceeds Congress's jurisdiction under the Commerce Clause. We affirm the conviction, and remand for resentencing.

### I.

On June 6, 1998, in San Francisco, California, a plain-clothes police officer saw Gonzales and another individual engaged in a possible narcotics transaction. The officer approached the pair and identified himself as a police officer. Gonzales immediately took off running. As he fled, he pulled a gun from his waistband and threw it to the ground. Once caught, he admitted that the gun was his. Charges were filed in state court. Gonzales failed to appear in court, and a bench warrant was issued for his arrest.

On November 24, 1998, police officers spotted Gonzales carrying a green backpack near Precita Park in San Francisco, California. Once Gonzales saw the officers, he dropped the backpack and walked away from it. He was immediately arrested and searched. Seized from his shirt and pants pockets were various drugs and $243 in cash. The officers also seized and inventoried the green backpack. The backpack contained a gun, various drugs, a rental car agreement, a pipe, four cigarette lighters, a butane torch, a small spoon, cigarette rolling papers and a black leather wallet that contained both a digital scale and a notebook with three sheets listing numbers and dates.

On January 1, 1999, a one-count indictment was filed in federal district court against Gonzales, charging him with being a felon in possession of a firearm. A superseding indictment, filed March 24, 1999, added three counts arising from the events of November 24, 1998. On July 8, 1999, Gonzales pleaded guilty to count one-

---

* The Honorable Richard D. Cudahy, Senior United States Circuit Judge for United States Court of Appeals for the Seventh Circuit, sitting by designation.

being a felon in possession of a firearm. Trial on the remaining three counts began on July 12, 1999. On July 15, 1999, the jury convicted Gonzales on all three counts.

At sentencing on October 12, 2000, the district court found that all of the drugs seized from Gonzales were intended for distribution. The court departed two levels downward because Gonzales had suffered physical mistreatment by guards while in custody. Gonzales was then sentenced to 144 months in prison, followed by five years of supervised release. Gonzales appeals.

## II.

This court has jurisdiction under 28 U.S.C. § 1291 since this is an appeal from a final judgment of a district court. A district court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. Leon–Reyes,* 177 F.3d 816, 819 (9th Cir.1999). A district court's decision to admit expert testimony also is reviewed for an abuse of discretion. *United States v. Alatorre,* 222 F.3d 1098, 1100 (9th Cir.2000). Such rulings will be reversed only if "manifestly erroneous." *United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir.), *cert. denied,* 530 U.S. 1268, 120 S.Ct. 2733, 147 L.Ed.2d 995 (2000). The district court's factual findings at sentencing are reviewed for clear error. *United States v. Frega,* 179 F.3d 793, 811 n. 22 (9th Cir.1999). Findings of fact must be supported by a preponderance of the evidence. *Id.* We review a challenge to the constitutionality of a statute de novo. *United States v. Mack,* 164 F.3d 467, 471 (9th Cir.1999).

## A.

The government's chief witness was DEA Special Agent Michael Heald, who was qualified as an expert in drug distribution and possession. He testified that the three sheets of paper in the notebook found in the backpack were "pay/owe" sheets commonly used by drug dealers to keep track of drug sales. Gonzales sought to exclude the pay/owe sheets as inadmissible hearsay since the government failed to identify the writer of these sheets. The district court denied that motion, but it did provide a limiting instruction that the pay/owe sheets were not being admitted for the truth of what was written on them, but rather to help the jury evaluate Agent Heald's testimony. On appeal, Gonzales argues that the district court abused its discretion in admitting the pay/owe sheets into evidence.

" 'Hearsay' is a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The pay/owe sheets would have been hearsay here if they were offered to prove the truth of their contents. On the contrary, the pay/owe sheets were offered here as "tools of the trade"; that is, to show that the items found in Gonzales' possession—the scale, the pay/owe sheets and the weapon—were items commonly used by distributors of drugs. Thus, we disagree with the trial court's conclusion that the pay/owe sheets were inadmissible hearsay. *See, e.g., United States v. Jaramillo–Suarez,* 950 F.2d 1378, 1383 (9th Cir.1991) (holding that admission of a pay/owe sheet "for the specific and limited purpose of showing the character and use of" an apartment does not implicate the rule against hearsay); *United States v. Huguez–Ibarra,* 954 F.2d 546, 552–53 (9th Cir.1992) (concluding that the hearsay rule was not implicated because drug notebooks were admitted not "to prove the truth of what was written in them" but "to show that the type of activities charged in the indictment were being carried out in the residence").

In contending that the pay/owe sheets were inadmissible hearsay, Gonzales relies upon *United States v. Ordonez,* 722 F.2d 530 (9th Cir.1983), *amended by* 737 F.2d 793 (9th Cir.1983), in which we held that the entries in a ledger constituted inadmissible hearsay unless the author of the entries had been identified. However, the ledger entries in *Ordonez* contained the names of the defendants and were the government's sole proof of the crime in several counts of the indictment. 737 F.2d at 800–02. Thus, the ledger entries were admitted in error for the truth that the words and numbers in the ledger asserted or implied—that the defendants engaged in the sale of drugs. Here, in contrast, the pay/owe sheets did not name the defendant. Unlike in *Ordonez,* the sheets here were not offered for the specific information conveyed by the writings on them but, instead, for their significance as objects closely associated with the drug trade. They qualify as "tools of the trade" and are admissible on the theory that (like the scales) such sheets were common to the practice of selling drugs.

■ Given that the pay/owe sheets are not hearsay, the inquiry becomes whether "there is a sufficient showing of relevance and authenticity and if [their] probative value outweighs undue prejudice." *Huguez–Ibarra,* 954 F.2d at 552. In *Huguez–Ibarra,* we concluded that the drug ledgers were "circumstantially authenticated" by virtue of being found in the same location as drugs and other drug paraphernalia, and by being corroborated by testimony of government agents. *Id.* at 552–53. The district court in *Huguez–Ibarra* gave limiting instructions stating that the records were admitted only to show the nature and use of the location, not for the truth of the matter asserted in them. *Id.* In the present case, the pay/owe sheets were found in the backpack with the gun, drugs, scale and other drug paraphernalia which "circumstantially authenticated" the sheets,

making their relevance as evidence of drug distribution clear. The district court also gave a limiting instruction, admonishing the jury that the sheets were not admissible for the truth of the matter asserted in them. For that reason, the result reached by the district court is correct.

■■ The district court was also correct in determining that, in any event, the pay/owe sheets were admissible for the purpose of evaluating expert testimony. An expert may base his opinion at trial on inadmissible facts and data of a type reasonably relied upon by experts in the field. Fed.R.Evid. 703. A fortiori, such an expert may rely on evidence that is admissible. In *United States v. 0.59 Acres of Land,* 109 F.3d 1493, 1496 (9th Cir.1997), we held that, when inadmissible evidence used by an expert is admitted to illustrate and explain the expert's opinion, it is necessary for the district court to give a limiting instruction that the evidence is to be considered solely to evaluate the expert opinion and not as substantive evidence. Here, the district court complied with the rule of *0.59 Acres of Land* when it admitted the pay/owe sheets with a limiting instruction. Such compliance, though not erroneous, was unnecessary because the pay/owe sheets were admissible on their own merits.

Gonzales also argues that the district court failed to make a specific finding that the probative value of the pay/owe sheets (in assisting the jury to evaluate the expert's opinion) substantially outweighed their prejudicial impact. But as Gonzales concedes, this requirement—contained in Fed.R.Evid. 703 (Dec. 1, 2000)—was not in effect at the time of the trial. Thus, the district court cannot be faulted for not making such an explicit finding.

Therefore, the district court did not abuse its discretion in admitting the pay/

owe sheets into evidence (with an unnecessary limiting instruction).

### B.

■ At trial, Agent Heald was asked whether the particular amount of drugs found on a person indicated whether such an individual possessed the drugs for personal use or for distribution. Heald testified that "my opinion would be that based upon the weight [of the drugs seized], that [sic] indeed it would be used to distribute as opposed to possess for your own ingestion." Heald was asked whether his opinion would be firmer or less firm if the person carrying the drugs was also carrying a gun, pay/owe sheets and a scale. He responded, "Well, those circumstances would lead me to believe and make my opinion extremely firm that that person was carrying those items for the purpose of distributing the drugs." On cross-examination, he stated that "all of the exhibits that I looked at were not for personal use." On appeal, Gonzales argues that the district court erred in admitting Heald's expert testimony because it consisted of an opinion about Gonzales's mental state, in violation of Rule 704(b) of the Federal Rules of Evidence.

Rule 704(b) bars an expert from stating "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Fed.R.Evid. 704(b). In *United States v. Morales*, 108 F.3d 1031, 1035–36 (9th Cir.1997) (en banc), we held that Rule 704(b)'s limitations on the scope of expert opinion testimony "appl[y] to all expert witnesses who are asked to state an opinion or inference as to a defendant's mental state." *Morales* stated that "[a] prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea." *Id.* at 1037. In *Morales*, we upheld the admissibility of the expert testimony at issue because—although "the prosecution presented th[e] testimony hoping the jury would infer the requisite mens rea the defendant's intent to distribute ... the testimony did not compel that inference." *Id.* at 1038.

■ The government argues that Heald's testimony is admissible under *Morales* because his testimony was simply that the fact pattern in the case was consistent with an intent to distribute. Gonzales disagrees. He argues that Heald's testimony crossed the line into mental state testimony because its gist was that someone with this amount of drugs would possess the drugs for distribution. It is sometimes difficult to distinguish between an expert opinion that would necessarily lead to the finding of a particular intent and an opinion that only comes close to this forbidden effect. For example, an opinion by a polygraph examiner that a defendant was lying when the defendant stated in the course of polygraph testing that he did not have a requisite mens rea is inadmissible under Rule 704(b) because, if the jury believed the expert opinion, it would necessarily find intent. *See United States v. Campos*, 217 F.3d 707 (9th Cir. 2000) (so holding). That is not the case here. Heald never directly and unequivocally testified to Gonzales's mental state; he never stated directly that Gonzales had the intent to distribute. Rather, he indicated his firm conviction that a "person" possessing the evidence in question would, in fact, possess the drugs for the purpose of distributing. Even if the jury believed the expert's testimony, the jury could have concluded that Gonzales was not a typical or representative person, who possessed the drugs and drug paraphernalia involved. In other words, it could be concluded that, although a typical person might have had the requisite purpose or

intent, Gonzales was atypical and did not. Finally, the line of questioning employed here is indistinguishable from the line of questioning upheld in *United States v. Gomez–Norena*, 908 F.2d 497, 502 (9th Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990) (holding that "the district court did not commit plain error by admitting expert testimony indicating that the defendant's actions and the amount of cocaine he was carrying were consistent with possession with an intent to distribute cocaine"), and in *United States v. Kinsey*, 843 F.2d 383 (9th Cir.), *cert. denied*, 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988) (same holding, but under a "manifest error" standard of review). Thus, the district court did not err in permitting the testimony of Agent Heald to be presented.

### C.

■ At the sentencing hearing, the district court made a finding of fact that, based upon the preponderance of the evidence, all of the drugs seized were intended for distribution. On appeal, Gonzales argues that the district court erred in sentencing because the government failed to meet its burden that the *entire* quantity of drugs was intended for distribution.

■ In *United States v. Kipp*, 10 F.3d 1463, 1466 (9th Cir.1993), we held that a sentence imposed for possession of drugs with intent to distribute must be based only on those drugs which were intended for distribution and not those intended for personal use. *Kipp* requires a district court, in sentencing, to make a finding on the amount of drugs possessed for distribution, and places the burden of proof upon the government as to the amount of drugs. *Id.* The district court makes such findings under a preponderance of the evidence standard. Id.; *cf. Harris v. United States*, — U.S. —, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (holding that judges can, under the pre-

ponderance of the evidence standard, make findings on sentencing elements, such as drug quantity, that trigger a higher mandatory minimum sentence).

The district court found that all of the drugs seized from Gonzales were possessed with the intent to distribute. In making this finding, the district court relied upon the jury verdict, the testimony of Agent Heald and the trial record. Both parties also filed sentencing memoranda. However, a review of the evidence examined by the district court reveals that the evidence does not adequately support the district court's finding.

The parties stipulated that all of the drugs seized were equivalent, under the Sentencing Guidelines, to 99.68 kilograms of marijuana. This resulted in a base offense level of 24. U.S. Sentencing Guidelines Manual § 2D1.1(c)(8) (2000). The stipulation, however, does not support a finding that all of the drugs stipulated to have been seized from Gonzales were for distribution. If it did, there would have been no need for a trial.

The jury verdict also does not directly support the district court's finding for sentencing purposes. Although the jury verdict indicates that the jury believed, beyond a reasonable doubt, that Gonzales possessed one or more controlled substances with intent to distribute, the jury verdict does not specify what kinds and amounts of drugs Gonzales possessed with intent to distribute. The superseding indictment against Gonzales mentions crack, cocaine and methamphetamine, but does not state a quantity for any drug. Further, the jury instruction allows the jury to find Gonzales guilty of possession with intent to distribute a controlled substance if the jury unanimously agrees that Gonzales intended to distribute any one or more of the specified drugs, but does not require the jury to make specific findings on the

kinds and amounts of drugs possessed by Gonzales with intent to distribute.[1] Thus, although the verdict would be consistent with a finding that all of the drugs were possessed with intent to distribute, it is not inconsistent with a finding that only some of the drugs were possessed with intent to distribute.

Similarly, the trial testimony, especially that of Agent Heald, can support a finding either that all of the drugs were possessed with intent to distribute, or that some of the drugs were possessed with the intent to distribute. Although the government contends that Heald testified that all of the drugs were for distribution, we do not believe that Agent Heald's testimony unequivocally addresses the distinction between "some" and "all." Agent Heald testified that the weight and amount of the drugs, combined with other evidence such as the gun and the pay/owe sheets, convinced him that the drugs were not possessed for personal use. Agent Heald also testified that the presence of drug paraphernalia and the fact that Gonzales was a drug addict is not inconsistent with a finding that the drugs were intended for distribution. Finally, Heald did not know about the purity level of the drugs seized from Gonzales (because this was new evidence first presented during sentencing). But Heald did testify that, if the drugs were very diluted, drug buyers would return to their dealers to complain. The problem with relying on Heald's testimony for sentencing purposes is that this testimony was directed to the issue of Gonzales's guilt or innocence of the crime of possessing *any* amount of a specified drug with intent to distribute. Heald's testimony was not directed to the sentencing issue of whether any of the drugs were intended for personal use.

Turning to the other evidence presented at trial, the presence of the gun and scale obviously tended to support Heald's testimony and the jury verdict. But, of course, this evidence says nothing about whether any drugs were for personal use. And, as we have noted, there was evidence of drug paraphernalia consistent with personal use found in the backpack as well. The district court also found that the testimony of the defense expert, Dr. Hayner, and the testimony of a government witness, Ms. Davis, were not contrary to Heald's testimony. However, although this finding meant that Hayner's and Davis's testimony could support a finding that *all* of the drugs were possessed with the intent to distribute, their testimony certainly does not preclude the finding that *some* of the drugs were possessed for personal use. The issue whether any of the drugs were for personal use—a sentencing issue—was not pursued in trial testimony.

Thus, the jury verdict, Heald's testimony and the trial record do not preclude a finding that some of the drugs were possessed for personal use. In itself, this is not sufficient for a conclusion that the district court's finding at sentencing was erroneous. However, there is more.

---

1. There is no *Apprendi* problem in this case because Gonzales was sentenced to 60 months in prison for the violation of 21 U.S.C. § 841 (count two of the indictment), which is the maximum sentence involving an unspecified quantity of marijuana (or marijuana equivalent). *See United States v. Buckland,* 289 F.3d 558 (9th Cir.2002) (en banc) (holding that, under Apprendi, a district court's determination of drug quantity was not plainly erroneous where the sentence imposed did not exceed the statutory maximum); 21 U.S.C. § 841(b)(1)(D) (2000) (stating statutory maximum sentence); *cf. Harris v. United States,* — U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (holding that a judge can make, under a preponderance of the evidence standard, findings of fact that determine the range of a sentence as long as the final sentence is less than the statutory maximum, which is determined by the elements of the crime).

First, there was abundant and undisputed evidence that Gonzales was a drug addict. It seems implausible that *none* of the drugs carried in a backpack by an addict was intended for personal use. For an addict to refrain from using drugs that were so readily available to him suggests a level of control and discipline not generally associated with drug abusers. More importantly, the district court never addressed the issues raised in Gonzales's Sentencing Memorandum.

In Gonzales's Sentencing Memorandum, he argued that certain of the drugs should not have been included because they were for personal use. Although Gonzales continued to argue that all of the drugs seized were for personal use, he specifically asserted that the white methamphetamine and the brown methamphetamine should have been excluded when calculating his sentence due to their low level of purity, which indicated that they were for personal use. Further, Gonzales argued that the brown methamphetamine was not saleable because it was discolored and had hardened into an unappealing brown mass.

Although the burden is ultimately on the government to prove that all of the drugs were intended for distribution, a defendant who seeks to have some of the drugs excluded from the sentencing determination has the burden of producing some evidence on this issue. Continued reliance on a defense that has been rejected by the jury (such as a defense that *all* of the drugs were for personal use) is insufficient to satisfy the defendant's burden. In this case, however, Gonzales's arguments concerning the white and brown methamphetamine were sufficient to require the district court to examine whether those drugs, or any other drugs, should be excluded because they were possessed for personal use.

Thus, we will vacate the sentence and remand the case for resentencing to be based on probative evidence distinguishing any drugs intended for personal use. For example, the district court should consider whether the brown methamphetamine was saleable in its discolored and hardened condition. The district court is free to take new evidence and may reach the same sentencing result via a more explicit analysis that is consistent with the Sentencing Guidelines. *See United States v. Matthews*, 278 F.3d 880, 885–86 (9th Cir.) (en banc) (holding that, as a general matter, on a remand for resentencing, the district court may take new evidence), *cert. denied*, —— U.S. ——, 122 S.Ct. 2345, 153 L.Ed.2d 173 (2002).

### D.

Finally, Gonzales argues that a prosecution under 18 U.S.C. § 922(g)(1) exceeds Congress's jurisdiction under the Commerce Clause, where the only link to commerce is the fact that the firearm once crossed a state line. In *United States v. Davis*, 242 F.3d 1162 (9th Cir.2001) (per curiam), we rejected the argument that Congress exceeded its jurisdiction under the Commerce Clause when it enacted section 922(g)(1). This decision is in accord with the conclusion of every other circuit that has considered the problem. *See, e.g., United States v. Dorris*, 236 F.3d 582 (10th Cir.2000) (affirming the constitutionality of section 922(g)(1)). Gonzales provides no new rationale for reconsidering our decision in *Davis*. Therefore, we reject Gonzales's argument.

### III.

For the foregoing reasons, Gonzales's conviction is AFFIRMED, but his sentence is VACATED and the case is REMANDED for resentencing.