**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 01 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50017 |
| Plaintiff - Appellee, | D.C. No. 3:12-cr-04076-GPC-1 |
| v. | |
| CRUZ TORRES-GONZALEZ, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted May 6, 2015
Pasadena, California

Before: NOONAN, WARDLAW, and MURGUIA, Circuit Judges.

Cruz Torres-Gonzalez (Torres) appeals his convictions for unlawful reentry

and making a false statement to a federal officer in violation of 8 U.S.C. § 1326

and 18 U.S.C. § 1001. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we

affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1. The district court did not commit plain error by instructing the jury that to find Torres guilty under 18 U.S.C. § 1001, it was required to find that he made a false statement "willfully, that is, deliberately and with knowledge that the statement was untrue." Assuming, without deciding, that the jury instruction amounted to error, Torres cannot establish that the error affected his substantial rights. *United States v. Marcus*, 560 U.S. 258, 262 (2010). Torres admitted at trial that he had been deported at least twenty times, that he had prior convictions for illegal reentry, and that he had previously pled guilty to the crime of making a false statement to a federal officer. Given Torres's extensive history with immigration authorities and his prior convictions for the same offense, he cannot credibly maintain that he did not know it was unlawful to make a false statement to immigration authorities.

2. The district court correctly concluded that sufficient evidence satisfied the materiality element of the crime of making a false statement to a federal officer in violation of 18 U.S.C. § 1001. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). A rational jury could have concluded that Torres's use of a false name when he was detained by border officials was "capable of influencing[] the decision of the decisionmaking body to which it was addressed." *United States v. King*, 735 F.3d 1098, 1107–08 (9th Cir. 2013). That border officials were eventually able to

2

ascertain Torres's correct name from his fingerprints is irrelevant. In assessing materiality, "our concern is not with the extent of the agency's reliance, but rather with the intrinsic capabilities of the false statement itself." *Id.* at 1108 (internal quotation marks omitted).

3. Sufficient evidence also supported the jury's finding that Torres voluntarily reentered the United States without permission in violation of 8 U.S.C. § 1326. *Jackson*, 443 U.S. at 319. United States Border Patrol Agent Phillip Kader testified that he arrested Torres approximately two miles north of the United States-Mexico border. Although Torres testified that he was forcibly dragged through a border fence into the United States from Mexico, the jury could have reasonably disbelieved his account. We must "assum[e] that the jury resolved all [credibility and evidentiary disputes] in a manner which supports the verdict." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (quoting *United States v. Ramos*, 558 F.2d 545, 546 (9th Cir. 1977)).

4. The district court did not abuse its discretion by admitting the testimony of the government's handwriting expert, Sandra Homewood. *United States v. Gonzales*, 307 F.3d 906, 909 (9th Cir. 2002). Based on Homewood's testimony at the *Daubert* hearing, the district court correctly found that Homewood's method of handwriting analysis had been tested; had a reasonable error rate; was subject to

3

peer review; and was subject to certain standards, even if not completely standardized. *See United States v. Prime*, 431 F.3d 1147, 1151–54 (9th Cir. 2004) (holding that the same method of handwriting analysis utilized by Homewood satisfied the reliability requirement of Federal Rule of Evidence 702). Nor was the district court's finding that Homewood was "well-versed" and "well-experienced" in the field of handwriting analysis clearly erroneous. Homewood testified that she had over thirty years of experience in the field of handwriting analysis and was certified by the American Board of Forensic Document Examiners.

5. Nor did the district court err in admitting Homewood's testimony that Torres deliberately disguised his handwriting when ordered to provide an exemplar. The challenged testimony did not violate Federal Rule of Evidence 704(b) because it did not "compel[] the jury to conclude that the defendant did or did not posses the requisite *mens rea*" of the crimes for which he was charged. *United States v. Finley*, 301 F.3d 1000, 1014–15 (9th Cir. 2002). Nor did the district court abuse its discretion in admitting Homewood's testimony that she was "absolutely certain" that Torres wrote the signature "Juan Ruiz Gonzalez" on the Form I-286. A forensic document examiner may state her ultimate conclusion as to whether the defendant's handwriting appears on questioned documents. *See Prime*, 431 F.3d at 1152, 1154. Moreover, Homewood's testimony mirrored the

4

language used by the American Society for Testing and Materials to describe a Level 1 identification, and the district court expressly permitted Homewood to testify that her identification of Torres's handwriting satisfied Level 1.

**AFFIRMED.**